UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:08-cr-00125-TWP-DML |
| ) | |
| WALTER L. MAYS, ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING COMPASSIONATE RELEASE**

This matter is before the Court is Defendant Walter Mays' ("Mr. Mays") *pro se* Motion for Compassionate Release/Reduction of Sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. 40.) Because of his age, pre-existing health conditions, and risk of serious illness should he contract COVID-19, Mr. Mays seeks an order reducing his sentence to time served, or in the alternative, for a modification of sentence allowing him to serve the remainder of his custodial term on home confinement. (Dkt. 49-2.) For the reasons stated below, his Motion is **granted.**

## I. BACKGROUND

Mr. Mays was arrested on July 10, 2008, after police noticed the car he was driving travelling in reverse down the street and when police approached the car, there was a strong smell of marijuana. Dkt. 49-8 at 4. During the traffic stop, a search of Mr. Mays and the vehicle led to the discovery of 74.26 grams of cocaine base, 4.59 grams of marijuana, a .38 Special revolver, a digital pocket scale, and a box of sandwich baggies. *Id*.

On December 16, 2008, Mr. Mays was sentenced to 240 months on Count I: possession with intent to distribute 50 grams or more of cocaine, and 60 months consecutive on Count II: felon in possession of a firearm, for a total of 300 months' imprisonment and 10 years of supervised

release; after he pled guilty. (Dkt. 25.) Judgment was entered on December 22, 2008. (Dkt. 26.) In June 2019, Mr. Mays' sentence was reduced to 180 months' imprisonment and 8 years of supervised release under § 404 of the First Step Act of 2018. (Dkt. 37.)

On June 2, 2020, Mr. Mays filed a *pro se* Motion for Compassionate Release under § 603 of the First Step Act of 2018 asserting that his diabetes, hypertension, cholesterol, and obesity combine with the risks of the COVID-19 pandemic to constitute "extraordinary and compelling circumstances" justifying his immediate release from the federal prison camp in Yankton, South Dakota ("FPC Yankton"). (Dkt. 40.) On June 4, the Court appointed counsel to represent Mr. Mays. (Dkt. 43.) The Court entered an Entry Addressing Exhaustion of Administrative Remedies on July 16, 2020, finding that Mr. Mays had exhausted his administrative remedies. (Dkt. 48.)

On October 30, 2020, counsel filed a memorandum in support of the Motion, asserting that extraordinary and compelling reasons warrant Mr. Mays' release, based upon his medical conditions in conjunction with the spread of COVID-19 at FPC Yankton. Counsel noted that Mr. Mays has served 93% of his sentence and will be released to home confinement on January 7, 2021 and his release date is June 29, 2021. (Dkt. 49-2 at 1.) Counsel also argued that Mr. Mays is not a danger to the community and that the 18 U.S.C. § 3553(a) factors do not outweigh the extraordinary and compelling reasons justifying his release. *Id.* at 5.

The Government opposed the Motion on November 10, 2020. (Dkt. 52.) In particular, the Government argued:

> Releasing Mays while he still has eight months of his sentence left to serve in prison cannot be squared with the section 3553(a) sentencing factors. While his health condition may pose a serious risk in light of COVID-19, the risk he poses to the community and the need for his sentence to promote respect for the law and to reflect the seriousness of his crimes outweigh any justification for release. He is a convicted drug dealer with lengthy criminal history who should not be given an additional eight months outside of prison walls. The Court should deny his Motion for Compassionate Release.

*Id*. at 1.  Mr. Mays replied on November 16, 2020. (Dkt. 53). The Government submitted a Notice of Supplemental Authority on December 2, 2020, recognizing that the Seventh Circuit has recently held that the Sentencing Commission's policy statement does not apply to motions for compassionate release filed by prisoners. *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020).  (Dkt. 54). The motion is ripe for resolution.

## II.  DISCUSSION

**A.    Legal Standards**

The general rule is that sentences imposed in federal criminal cases are final and may not be modified.  18 U.S.C. § 3582(c).  Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction.  18 U.S.C. § 3582(c)(1)(A)(i).    Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons."  Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018).  The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the

>> Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the

4

caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D). Mr. Mays seeks relief under the catchall provision in subsection D.

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, __ F. 3d __, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling

5

reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

**B.      Extraordinary and Compelling Reasons**

The Government does not contest that Mr. Mays has shown an extraordinary and compelling reason warranting a sentence reduction, (Dkt. 52 at 7), and the Court agrees.[1] Mr. Mays suffers from obesity and type two diabetes, both of which increase his risk for experiencing severe symptoms if he contracts COVID-19.[2] The nature of prisons means that the virus can spread very quickly and that inmates can do little to protect themselves. Accordingly, the Court concludes that extraordinary and compelling reasons warrant a sentence reduction in this case.

**C.      Danger to the Community or Another Person**

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant should be detained pending trial. These same factors guide our release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal

---

[1] In keeping with the Seventh Circuit's instruction in *Gunn*, 2020 WL 6813995, at *2, the Court has considered the rationale provided by Mr. Mays' warden in denying Mr. Mays' administrative request for relief. Mr. Mays' warden appears not to have considered the possibility that Mr. Mays could show an "extraordinary and compelling reason" under Subsection (D) of the policy statement and instead focused only on Subsections (A) through (C). (*See* Dkt. 49-2.) Thus, the warden's decision provides little guidance to the Court's analysis.

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Dec. 8, 2020).

>   crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>   
>   **(2)** the weight of the evidence against the person;
>   
>   **(3)** the history and characteristics of the person, including--
>   >   **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   >   
>   >   **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>   
>   **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Government argues that Mr. Mays has a lengthy criminal history and that Mr. Mays' prior convictions of drug felonies demonstrate that he would present a danger to the public. He was convicted of four felonies for possession of cocaine, forgery, and carrying a handgun without a license before the instant offense. (Dkt. 49-8 at 4, 10.) When he was arrested, he was armed with a loaded firearm and possessed a large amount of cocaine base. *Id.* at 4.

Mr. Mays acknowledges his prior history, and responds that he no longer poses a danger to the public. Since he began serving the instant sentence in 2008, he has had only one disciplinary conviction, in October 2014, for disruptive conduct. (Dkt. 49-7.) Before and since that incident, Mr. Mays has been conduct report free. He has taken classes in finance and in wellness while incarcerated. (Dkt. 49-9.) In addition, Mr. Mays is designated as a low risk of recidivism by the BOP and is confined in a minimum-security level prison. *Id.* He has presented a viable release plan to live with his wife of 25 years in Indianapolis, Indiana. He states that he has obtained a job with a trucking company. He has three adult children and wants to become part of their lives.

7

Mr. Mays has a significant criminal history, but his prior felony convictions are now all more than 20 years old. Likewise, his conduct in this case was serious, but he has served 12 years in the BOP with an almost perfect conduct record. He is confined in a minimum-security level prison and even the BOP regards him as a low risk for recidivism. The support of his wife and the prospect of gainful employment should help Mr. Mays transition back to being a law-abiding member of the community. Accordingly, pursuant to § 3142(g), the Court finds that Mr. Mays does not pose a danger to any other person or the community if his sentence is reduced to time served.

D.  **Analysis of § 3553(a) Factors**

The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

As to personal characteristics, Mr. Mays is 49 years old. He is now incarcerated at FPC Yankton, which is a minimum-security facility. As of December 8, 2020, the BOP reports that FPC Yankton has no active COVID-19 cases among inmates and three inmates have

recovered. It also reports that 12 staff are positive. There have been no reported COVID-19 deaths at the facility. https://www.bop.gov/coronavirus/ (last visited Dec. 8, 2020). Nonetheless, recently, the number of COVID-19 cases has risen dramatically in South Dakota. During the month of October 2020, the number of cases in Sioux Falls, South Dakota rose from 916 on October 1 to 4307 on October 30, 2020. https://www.keloland.com/news/ healthbeat/coronavirus/closer-look-at-growth-of-covid-19-case-numbers-in-sioux-falls-through-october. Mr. Mays has conditions that put him at an increased risk of experiencing severe symptoms if he contracts COVID-19 and, as an inmate, he is not easily able to take steps to protect himself from the virus.

The Government contends that the need to promote respect for the law and to reflect the seriousness of the offense weighs against release. The Government argues that Mr. Mays should not get a second "break" under the First Step Act because he already received a sentence reduction of 120 months in June 2019. The Court, however, agrees with Mr. Mays that the 2019 stipulated sentence reduction under § 404 of the First Step Act was based on an earlier disparity between crack and powder cocaine sentences, (Dkt. 35), and that having properly received that relief is not a basis on which to deny relief under § 603 of the First Step Act based on the current circumstances caused by COVID-19.

As discussed above, Mr. Mays' offenses were serious and deserving of substantial punishment. But he has served 12 years for his current offense, which is 93% of his statutory sentence. (Dkt. 49-3.) The BOP website states that his projected release date is June 29, 2021, and BOP records show that he is scheduled to be released to the Volunteers of America on January 7, 2021. (Dkt. 49-9.) The Government's concerns as to respect for the law and the seriousness of the offense would weigh more heavily if Mr. Mays were not already set to be released in the very near future. Serving 12 years in prison represents a severe punishment and adequately reflects the

seriousness of his crimes. Mr. Mays will also be subject to supervision for 8 years, which will continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of his conduct.

Given the risk Mr. Mays faces from the COVID-19 pandemic, the Court finds that further incarceration would impose a burden on him beyond that necessary to satisfy the purposes of punishment pursuant to § 3553(a), and that the § 3553(a) factors weigh in favor of reducing Mr. Mays' sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III. CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Mays' sentence and his immediate release from imprisonment, that Mr. Mays does not pose a danger to other persons or the community, that a balance of the § 3553(a) factors weighs in favor of a reduction, and that such a reduction does not offend the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Mays' *pro se* Motion for Compassionate Release, Dkt. [40], **ORDERS** that Mr. Mays' sentence of imprisonment be reduced forthwith to **time served as of Friday, December 11, 2020,** and further **ORDERS** the Bureau of Prisons to effect the release of Mr. Mays by **4:00 p.m. on Friday, December 11, 2020**. Counsel for the Government is **ORDERED** to transmit the AO248 Order to Mr. Mays' custodian **no later than 5:00 p.m. on Thursday, December 10, 2020**.

The length of Mr. Mays' term of supervised release remains eight (8) years, as stated in the Court's June 27, 2019 Order (Dkt. 37). Mr. Mays will be on **home detention/incarceration** for **90 days** following his release from imprisonment. All other terms of supervised release originally imposed in the Judgment and commitment order of December 22, 2008, (Dkt. 26), remain unchanged, except for the following addition: Mr. Mays is **ORDERED** to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

**SO ORDERED**.

Date: 12/9/2020

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Finis Tatum, IV
TATUM LAW GROUP, LLC
ftatum@tlgindy.com

Adam Eakman
UNITED STATES ATTORNEY'S OFFICE
adam.eakman@usdoj.gov

Barry Glickman
UNITED STATES ATTORNEY'S OFFICE
barry.glickman@usdoj.gov